## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH LODUCA,** | : | **Civil No. 4:23-CV-1444** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THOMAS MCGINLEY, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## MEMORANDUM OPINION

### I.    Factual and Procedural Background

Joseph LoDuca is a prolific *pro se* petitioner who has filed multiple post-convictions motions, petitions and appeals in numerous state and federal courts. The sheer volume of these filings presents a challenge for courts in assessing LoDuca's claims, a challenge which is compounded by LoDuca's frequent reliance upon a stream of consciousness writing style which assumes a vast body of pre-existing knowledge on the part of the reader.

So it is here.

On August 30, 2023, LoDuca filed a petition for writ of habeas corpus with this court. (Doc. 1). In this petition, LoDuca indicated that he was incarcerated on August 18, 2020, when he received notice of a bench warrant lodged against him as a parole violator. (Id. at 5). Alleging that he did not receive an initial hearing on this bench warrant within 72 hours, as required by state practice, LoDuca insists that his

subsequent sentencing in this matter, which allegedly took place on September 11, 2020, less than one month later, was a nullity and he must be released. (Id.)

While this petition seeking extraordinary habeas corpus relief has been pending, LoDuca has filed a second motion which demands a different type of extraordinary relief. Specifically, LoDuca filed a motion requesting that the Department of Corrections be enjoined from transferring him from his current place of incarceration, the apparent prison of his choice. (Doc. 8).

Finally, on January 25, 2024, LoDuca filed a third motion, (Doc. 21), styled as a motion to supplement his response to the respondents' filings. This pleading, however, reflected a fundamental confusion regarding the nature of this case. LoDuca initially filed this action as a petition for writ of habeas corpus, seeking his release from state custody. LoDuca's latest filing, however, demands a non-negotiable sum of $10,000 in damages based upon what LoDuca asserts was a failure to provide him with sufficient access to a law library. Thus, LoDuca's case, which began as a habeas corpus petition, is now transmogrifying into a damages lawsuit.

This petition for writ of habeas corpus and these accompanying motions for a temporary restraining order and for damages are ripe for resolution. For the reasons set forth below, the petition and motions will be denied.

At the outset we note that LoDuca advances these claims largely in the abstract without the benefit of any supporting factual detail. However, a review of state court dockets discloses that in 2019 LoDuca was charged in Snyder County with drug

possession, simple assault, and terroristic threats. Commonwealth v. LoDuca, Cr. No. CP-55-CR-0000308 and 0000309-2019.[1]  In January of 2020, LoDuca was convicted of terroristic threats and drug possession following the entry of *nolo contendere* pleas.

Eight months later, in August of 2020, LoDuca incurred new state drug changes in Dauphin County, Pennsylvania. Commonwealth v. LoDuca, Cr. No. CP-22-CR-0001345-2021. These charges ultimately were resolved in July of 2021 through a guilty plea conviction.

From the existing court records it appears that a bench warrant issued for LoDuca in his Snyder County cases in July of 2020, citing LoDuca for violating his state parole. Commonwealth v. LoDuca, Cr. No. CP-55-CR-0000308-2019. LoDuca then began filing a spate of *pro se* motions in state court. Initially it appears that the state courts endeavored to schedule a bench warrant hearing in LoDuca's case, however, the state court docket reflects the filing of a motion on September 3, 2020, to continue LoDuca's revocation hearing. LoDuca then proceeded to a revocation hearing on September 11, 2020, at which time his release was revoked and he was re-sentenced to 1-to-2 years' incarceration.

What then followed was a bewildering array of *pro se* post-conviction motions, petitions and appeals. Commonwealth v. LoDuca, Cr. No. CP-55-CR-0000308-2019

---

[1] This factual narrative is taken from the state court dockets which can be accessed at https://ujsportal.pacourts.us/CaseSearch. We take judicial notice of these state court records.

at 18-43. These filings defy any easy description, but include no less than ten appeals lodged by LoDuca in addition to multiple motions filed with the trial court. LoDuca's state court filings and appeals have continued unabated even after LoDuca filed this petition for writ of habeas corpus in federal court. For example, as recently as December 2023, while the petition was pending, LoDuca was also lodging notices of appeal with the Pennsylvania Superior Court, appealing from various state trial court rulings in his criminal case. Id. at 43. Given this active, ongoing state court litigation, it is beyond dispute that LoDuca has not yet fully exhausted his post-conviction claims in state court.

In light of this immutable fact, we are reminded that one of the statutory prerequisites to a state prisoner seeking habeas corpus relief in federal court is that the prisoner must "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Therefore, the instant case presents a model of an unexhausted petition since the petitioner seeks federal habeas corpus review of a state court conviction without having first fully exhausted his state court remedies. In light of the fact that this is undeniably an unexhausted federal habeas corpus petition, the question before this Court is how best to address what is currently a premature and procedurally flawed petition. For the reasons set forth below, that this petition will be dismissed.

We also note that the current petition, which decries an alleged failure to promptly conduct a preliminary hearing on a state parole violation, does not present

a matter of such constitutional dimension as to warrant habeas corpus relief. Further, we conclude that LoDuca is not entitled to choose his place of confinement. Finally, we note that LoDuca may not pursue a damages claim under the guise of a federal habeas corpus petition, as he attempts to do in his latest filing. Therefore, his motion for a temporary restraining order and for damages will also be denied.

## II.   Discussion

### A. Habeas Corpus Standards of Review

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court.

In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in [sic] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State;

. . . .

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus in [sic] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," section 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to section 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

Furthermore, state prisoners seeking relief under section 2254 must also satisfy

specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). Section 2254's exhaustion requirement calls for total exhaustion of all available state remedies. Thus, a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a

section 2254 petition. <u>Walker v. Vaughn</u>, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. <u>Evans v. Court of Common Pleas</u>, 959 F.2d 1227, 1231 (3d Cir. 1992); <u>Santana v. Fenton</u>, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." <u>Parker v. Kelchner</u>, 429 F.3d 58, 63 (3d Cir. 2005).

When presented with a plainly unexhausted petition, like the instant petition, the court has several courses available to it. First, the court can dismiss the petition without prejudice, so that the petitioner can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues. <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). This total exhaustion approach facilitates the important goals of federalism and comity that are essential to the exhaustion rule, and allows for complete legal and factual development of these cases in the state legal system before petitions are presented in federal court.

However, because strict compliance with this total exhaustion rule can create procedural dilemmas for some petitioners, the courts have adopted another procedure which may be employed in a limited number of cases, a "stay and abeyance"

procedure in which the federal habeas petition is stayed pending exhaustion of state remedies by the petitioner. Rhines v. Weber, 544 U.S. 269 (2005). Yet, while granting a stay and abeyance is an available procedure, it is not a preferred course of action in these cases. Because a "stay and abeyance" procedure, if used too frequently, can undermine the policies favoring prompt and orderly resolution of state habeas petitions, the Supreme Court has held that:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines v. Weber, 544 U.S. at 277. Therefore, in order to qualify for a stay and abeyance, a petitioner should "satisf[y] the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d Cir. 2009).

### B. LoDuca's Habeas Corpus Petition Should Be Dismissed

#### 1. The Petition is Not Fully Exhausted

In the instant case, it is apparent that the exhaustion doctrine applies and bars consideration of this petition since it is evident that LoDuca is still actively litigating various post-conviction claims in state court. Indeed, given the immutable fact of this

active, on-going state court post-conviction litigation, this federal pleading is the very model of an unexhausted petition which the court ordinarily should dismiss without prejudice so the petitioner can return to state court and totally exhaust these claims. Rose v. Lundy, 455 U.S. 509 (1982). Further, in this case, we will dismiss this petition, in lieu of engaging in any stay and abeyance, because we find that this petition fails to "satisf[y] the three requirements for a stay as laid out [by the Supreme Court] in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d Cir. 2009).

Quite the contrary, LoDuca makes no showing of good cause for the erratic legal course he has elected to follow, and his state court litigation history has been marked by procedurally irregular and inappropriate missteps. Nor can LoDuca avoid this outcome by arguing that exhaustion of these state remedies on his part should be excused due to the futility of exhausting those state remedies. Because of the strong policies favoring exhaustion of state remedies, petitioners who seek to be excused from this requirement must make an exacting showing to forego this exhaustion requirement. Lee v. Stickman, 357 F.3d 338, 341 (3d Cir. 2004); see also Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir. 2002) (refusing to excuse exhaustion in the face of 27-month delay). As a practical matter, the exhaustion requirement will only be excused in extreme cases where "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable."

Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir. 1986).

Here, the state court dockets reveal that the state courts have consistently endeavored to promptly address LoDuca's voluminous filings in his state criminal case. Moreover, any delays experienced by LoDuca have been a product of his erratic pleading practice, which appears to have inundated those courts with multiple motions and appeals. Therefore, we cannot say that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable," Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir. 1986), and the petitioner has not provided sufficient justification or excuse for this failure to exhaust his state legal remedies on all of his legal claims which would warrant foregoing the exhaustion requirement that is plainly prescribed by law. Therefore, the failure to exhaust these state remedies cannot be excused, and his petition for writ of habeas corpus will be dismissed.

## 2.  **The Petition Fails on its Merits.**

In any event, to the extent that it can be understood, LoDuca's petition fails on its merits. The gravamen of LoDuca's petition can be simply stated: Alleging that he did not receive a prompt initial hearing on the parole violation bench warrant that was lodged against him in August of 2020, as required by state practice, LoDuca insists that his subsequent sentencing in this matter, which allegedly took place on September 11, 2020, less than one month later, was a nullity and he must be released. The state court docket in LoDuca's case, however, tells a somewhat different story.

That docket reveals that a bench warrant issued for LoDuca in his Snyder County cases in July of 2020, citing LoDuca for violating his state parole. <u>Commonwealth v. LoDuca</u>, Cr. No. CP-55-CR-0000308-2019. LoDuca then began filing a spate of *pro se* motions in state court. Initially it appears that the state courts endeavored to schedule a bench warrant hearing in LoDuca's case in August 2020, however, the state court docket reflects the filing of a motion on September 3, 2020, to continue LoDuca's revocation hearing. LoDuca then proceeded to a revocation hearing on September 11, 2020, at which time his release was revoked and he was re-sentenced to 1-to-2 years' incarceration.

In the past, convicted state parole or probation violators like LoDuca have invited courts to vacate their revocation sentences based upon brief delays in conducting a preliminary hearing which allegedly violated state law. Yet, such requests, while made in the past, have not been embraced by the courts. <u>Bell v. Ctr.</u>, No. 09 CIV.7218 PKC GWG, 2010 WL 2000526, at *7 (S.D.N.Y. May 18, 2010), <u>report and recommendation adopted sub nom.</u> <u>Bell v. Warden Anna M. Kross Ctr.</u>, No. 09 CIV 7218 (PKC), 2010 WL 2812981 (S.D.N.Y. July 15, 2010); <u>U. S. ex rel. Williams v. Russell</u>, 264 F. Supp. 505, 505 (E.D. Pa. 1967). In rejecting these claims courts have relied upon several fundamental truths. First, it is well settled that:

> To the extent that [the petitioner]'s claim relies upon state law, it must be denied because violations of state law are not cognizable on habeas review. <u>See, e.g., Estelle v. McGuire</u>, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("federal habeas corpus relief does not lie for errors of state law"); <u>Vasquez v. Walker</u>, 2004 WL 594646, at *4

(S.D.N.Y. Mar.25, 2004) ("[v]iolations of state statutory rights are not reviewable by federal habeas courts").

Bell v. Ctr., 2010 WL 2000526, at *7. Therefore, LoDuca cannot rely upon some alleged violations of state procedural rules to assert a federal claim warranting habeas corpus relief.

In addition, this petition fails as a matter of constitutional law for at least two other reasons. At the outset, it is apparent that the delay in conducting a revocation hearing was brief and discrete, encompassing less than one month. Moreover, the state court docket seems to reflect that this delay was, in part, a product of LoDuca's own filings, which included a motion to continue the revocation hearing. On these facts, this brief delay simply does not rise to the level of a constitutional infraction since:

> The Supreme Court has held only that a parolee has a due process right to a preliminary hearing held "as promptly as convenient" after the execution of the warrant. Morrissey, 408 U.S. at 485. The Supreme Court has not specified what length of time would violate due process.

Id. (rejecting claim based upon 18-day delay in conducting preliminary hearing). In this case, the state court record discloses that LoDuca's revocation proceedings were addressed, and resolved, within approximately thirty days. Moreover, at least part of that delay was due to a defense request to continue the revocation proceedings. On these facts, we find hat the revocation hearing was conducted as promptly as convenient, which is all that the Constitution requires.

13

Finally, given the state court determination on September 11, 2020, that LoDuca violated his state release—a finding which LoDuca does not appear to challenge in this petition—it cannot be said that the petitioner has suffered any cognizable prejudice which would warrant post-conviction relief. This, too, is a fatal flaw in this petition since it is clear that:

> "Even if a constitutional error occurs during a preliminary hearing, relief is warranted only if the petitioner shows 'that he was subsequently deprived of a fair trial or was otherwise prejudiced by reason of the error.' " Ratliff v. Martel, 2012 WL 3263935, *4 (S.D.Cal., Aug. 9, 2012) (quoting People v. Stewart, 33 Cal.4th 425, 462 (2004)). Likewise, even "the deprivation of a preliminary hearing would not require the vacating of a subsequent conviction." Davin, 2008 WL 3049853 at *1 (citing Gerstein v. Pugh, 420 U.S. 103, 119 (1975) (stating "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause") and United States v. Studley, 783 F.2d 934, 937 (9th Cir.1986) (affirming conviction despite violation of statutory probable cause requirement)). "Accordingly, any alleged evidentiary insufficiency at a preliminary hearing, or other alleged errors occurring in relation to a preliminary hearing, cannot provide a basis for habeas relief with respect to a subsequent conviction or sentence." Id. at *1 (citing Colbert v. Yates, 2008 WL 942842, *5 (C.D.Cal. Apr. 4, 2008) (claimed inability to cross-examine a witness at the preliminary hearing fails to state a claim cognizable on federal habeas corpus); Hill v. Wolfenbarger, 2005 WL 3693204, *4 (E.D.Mich. Nov. 22, 2005) (claim of insufficiency of the evidence at a preliminary examination "raises a matter of state law and cannot form a basis for federal habeas corpus relief"); Fowler v. Leeke, 509 F.Supp. 544, 548 (D.S.C. Sept. 14, 1979) ("the claim that petitioner did not receive a preliminary hearing is not a federal issue")).

Viltz v. McEwen, No. 12CV1494-MMA BLM, 2013 WL 5775337, at *16 (S.D. Cal. Oct. 25, 2013).

Simply put, in the absence of any cognizable constitutional violation or demonstrable prejudice, LoDuca's habeas corpus petition also fails on its merits.

### 3. **LoDuca's Motion for Temporary Restraining Order Will Be Denied**

In addition, we note that LoDuca has filed a motion seeking to enjoin prison officials from transferring him to another state correctional facility. (Doc. 8). This motion warrants only brief consideration. As we have noted in the past, this claim plainly fails as a matter of law:

> In this regard, in the past, inmates have frequently sought preliminary injunctive relief similar to that demanded . . . here, inviting courts to regulate inmate transfers. Yet such requests, while frequently made, have rarely been embraced by the courts. As we have previously noted on this score:
>
>> [I]t is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id. Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See. e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Indeed, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979) (transfer from Virgin Islands to mainland); Rodriguez–Sandoval v. United

<u>States</u>, 409 F.2d 529 (1ˢᵗ Cir. 1969) (transfer from Puerto Rico to Atlanta). In short, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. <u>See Olim v. Wakinekona</u>, 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); <u>Montanye</u>, 427 U.S. at 242; <u>Bulger v. U.S. Bureau of Prisons</u>, 65 F.3d 48 (5thCir. 1995); <u>Marchesani v. McCune</u>, 531 F.2d 459 (10th Cir.), <u>cert. denied</u>, 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976).

<u>Smithson v. Frederico</u>, No. 1:14-CV-2073, 2015 WL 1608023, at *5 (M.D. Pa. Jan. 7, 2015), <u>report and recommendation adopted sub nom.</u> <u>Smithson v. Federico</u>, No. 1:14-CV-2073, 2015 WL 3405022 (M.D. Pa. May 26, 2015). Simply put, as a legal matter [a prisoner] has no constitutional right to choose his prison. Therefore, he may not use a motion for preliminary injunction as a vehicle to choose his place of confinement, or forbid a prison transfer. . . .

<u>Cummings v. Weller</u>, No. CV 1:22-1119, 2023 WL 3407165, at *3–4 (M.D. Pa. Feb. 21, 2023), <u>report and recommendation adopted,</u> No. CV 1:22-1119, 2023 WL 2772130 (M.D. Pa. Apr. 4, 2023). Therefore, this request for extraordinary injunctive relief which would, in effect, allow LoDuca to choose his prison fails as a matter of law and will be denied.

### 4. **LoDuca's Demand for $10,000 in Damages is Inappropriate.**

Finally, LoDuca's latest filing which demands a non-negotiable sum of $10,000 in damages based upon what LoDuca asserts was a failure to provide him with sufficient access to a law library, (Doc. 21), confuses and conflates two very

different causes of action—a habeas corpus petition and a civil rights damages lawsuit.

>As we have noted in the past:
>
>The writ of habeas corpus, one of the protections of individual liberties enshrined in our Constitution, serves a specific, and well-defined, purpose. The writ of habeas corpus exists to allow those in the custody of the state to challenge in court the fact, duration and lawfulness of that custody. As the United States Court of Appeals for the Third Circuit has aptly noted: "The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.' " Powers of Congress and the Court Regarding the Availability and Scope of Review, 114 Harv. L.Rev. 1551, 1553 (2001). Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir.2002). However, there is a necessary corollary to this principle, one which has long been recognized by the courts; namely, "[i]f a ... prisoner is seeking [other relief], he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release-the traditional purpose of habeas corpus. In [such cases], habeas corpus is not an appropriate or available federal remedy." Preiser v. Rodriguez, 411 U.S. 475, 494, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

Rodriguez v. Ct. of Common Pleas of Lackawanna Cnty., No. 1:12-CV-830, 2012 WL 2115729, at *3 (M.D. Pa. May 10, 2012), report and recommendation adopted, No. 1:12-CV-830, 2012 WL 2115415 (M.D. Pa. June 11, 2012). Therefore, a habeas petitioner like LoDuca simply "is not entitled to convert a habeas corpus petition into a vehicle for obtaining compensatory damages." Albert-Diaz v. Scism, No. 1:10-CV-2457, 2011 WL 950137, at *9 (M.D. Pa. Jan. 20, 2011), report and recommendation

adopted, No. 1:CV-10-2457, 2011 WL 918246 (M.D. Pa. Mar. 15, 2011).

Accordingly, to the extent that he seeks damages, LoDuca's:

> recourse, if any, would be through a civil rights action brought under 42 U.S.C. § 1983 challenging this prison placement decision. However, because the filing requirements for habeas and § 1983 actions differ, and the two types of actions raise different issues in terms of procedural requirements and substantive standards, it would not be appropriate to simply construe this pleading, which was clearly designated as a habeas petition, as a § 1983 action.

Rodriguez, 2012 WL 2115729, at *4. Instead, we will dismiss this petition without prejudice to the Petitioner later filing a separate action under § 1983 if he chooses to do so.

### III.    **Conclusion**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, (Doc. 1), the Petition will be DENIED, and since the petitioner has not demonstrated "a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253 (c)(2); see also Buck v. Davis, 137 S. Ct. 773-75 (2017); Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000) a certificate of appealability will not issue. In addition, the petitioner's motion for temporary restraining order, (Doc. 8), and motion seeking damages, (Doc. 21), will also be DENIED.

An appropriate order follows.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: February 5, 2024